Aron Steuer, J.
These matters were presented to the court below on an agreed statement of facts. Each of the plaintiffs is an employee of the defendant and, as the facts are identical in each case, they will be considered as a single case.
Defendant is in the printing business and its employees arc organized in three shifts. Plaintiff’s working hours are from 1:30 a.m. to 8:30 a.m. Defendant has a contract with a labor union and plaintiff conceded that he is bound by that contract. The contract provides that the workers in the shifts other than plaintiff’s shall have Election Day off as a paid holiday. The members of plaintiff’s shift get the day following Election Day off as a paid holiday.
Section 226 of the Election Law provides that any person entitled to vote may absent himself for a- period of two hours while the polls are open. It further provides: “If the voter shall notify his employer before the day of election of such intended absence, and if thereupon two successive hours for such absence shall be designated by the employer, and such absence shall foe during such designated hours, or if the employer upon the day of such notice makes no designation, and such absence shall be during any two successive hours while the polls are open, no deduction shall be made from the usual salary or wages of such voter.” Plaintiff designated the hours 6:30 a.m. to 8:30 a.m. The polls were open from 6:00 a.m. to 7:00 p.m. The employer made no designation. Plaintiff left his work at 6:30 a.m. and voted. The employer deducted two hours’ wages and suit is for that sum. The court ruled in favor of the plaintiff.
The stipulated facts present two questions on neither of which is there controlling authority. The first question is whether an employee can take time off when the polls are open a sufficient time to provide adequate opportunity to vote outside of working hours. The second question is whether the holiday provisions in the contract constitute a binding agreement to use nonworking time for voting.
*910 On the first question the court below relied on the wording of the statute, certain interpretations by the Attorney-General, a Municipal Court decision (Horner v. General Motors, 138 N. Y. Supp. 2d 799), and the case of Williams v. Aircooled Motors (307 N. Y. 332). In the Municipal Court case, the question was only secondarily raised. The main issue was whether a village election was an election contemplated by the statute. In the Williams case in the Court of Appeals the employer designated the last two hours of a nine-hour working day. The employee usually worked nine hours, seven hours at regular pay and two hours at overtime. The issue was whether he could collect the overtime pay for the two hours devoted to voting. The court held that he could, using this significant language (p. 336): ‘1 And, relating it to this case, it assures him that, if he works for seven hours and takes off the two hours allowed him to vote, he will be paid the amount he would have received — his ‘ usual salary or wages ’ — had he not voted and had he remained for his accustomed full nine hours.”
From this it appears that the foundation of the holding was that the voting time was a part of the accustomed working time. This is no indication of what the court would have decided if the two hours were outside the accustomed working time.
The answer to this question is what the Legislature intended. The object of the statute is to prevent workers from being deprived of their votes by economic necessity. There is also another recognized motive, albeit somewhat reflective on the democratic process; that of inducing the worker to vote by holding out the opportunity of doing so on his employer’s time (Day-Bright Lighting v. Missouri, 342 U. S. 421). Like many other questions, the one in this case is a matter of degree. It is plain that neither purpose of the statute is served by allowing pay here. The polls were open for 13 hours. Only two hours and a half of these 13 coincided with working hours. The employee was not put to the choice of exercising his franchise or maintaining his earnings. It can be fairly said that the union contract, by providing a full holiday for two thirds of the staff, obviated any question of whose time was to be devoted to exercising the right to vote. And as to the plaintiff, whose working hours allowed him 10% hours instead of the 13 the other employees had in which to cast their votes, he received a full day off to compensate him. It is, as we said, a question of degree. Not every instance where the voting day and the usual working day do not coincide will warrant a deduction for the hours employed in voting. But where the facts, as here, show that taking the time has no real relation to the accomplish- *911 men-t of the objects of the statute, but is merely an attempt to mulct the employer through the medium of statutory words, the disparity is of great significance. As for the second object, again the facts show that it is not being accomplished. Two thirds of the employees had to vote on their own time because they contracted to have that time as their own. The plaintiff and the others on his shift contracted for an equal amount of free time, and the small portion of working and voting time that ran concurrently was obviously the reason for the exchange of time. One must have a low opinion indeed of the value of the elective franchise to contend that a man who would not exercise it in 10% hours of his own time would in the two hours and a half of his employer’s.
A rather obvious factor was not advanced by either party nor considered by the court below, and we believe quite properly. That was the fact that the employer made no designation of voting time. It is patent that this is a test case. The most that could result from a decision based on the employer’s failure to designate would be to postpone decision on the main issue till the next election. Neither party so desired, and we join the court below in ignoring this factor. We cannot but advert to the seriousness of this situation. It is obvious that should these plaintifFs succeed, next year the entire shift will take the two hours at full pay. The other two shifts will complain that they are being unfairly treated, as the third shift gets the same full day off that they get plus two hours. How can they be refused two additional hours’ pay? And a small but significant step in the creeping inflation, due to pay without production, is accomplished.
The judgments should be reversed, with $10 costs in each case, and complaints dismissed, with costs.
Aurelio, J., concurs; Tilzer, J., concurs in result.
Judgments reversed, etc.