708 P.2d 1054

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**KENNETH P. THOMPSON CO., INC.,**
**Defendant-Appellant.**

**No. 8468.**

Court of Appeals of New Mexico.

Oct. 22, 1985.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Hartley B. Wess, Miller & Wess, Ltd., Albuquerque, for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

Defendant, Kenneth P. Thompson, Co., Inc., employer, appeals from a criminal conviction imposed against it for failing to allow an employee time to vote contrary to NMSA 1978, Section 1–12–42. On appeal, employer challenges the propriety of its conviction and raises two issues: (1) whether an employer has a right to adjust an employee's hours of work on election day to come within an exception provided by Section 1–12–42(B); and (2) the constitutionality of the statute. We reverse and remand.

### FACTS

Defendant, Kenneth P. Thompson, Co., Inc., is a construction company that engages in general building and construction business and employs a large number of personnel. On Tuesday, November 6, 1984, the date of a statewide general election, defendant was engaged in several different construction projects located at various sites in Albuquerque. One of its employees, Joseph M. Lujan, a qualified voter, reported for work at 8:00 a.m. on election day and at approximately 2:30 p.m., informed the job foreman, Jerry Patterson, that he was leaving to go vote. The foreman notified Lujan not to leave until shortly before 4:00 p.m. The foreman further explained that because it was election day, the company had ordered work to stop a few minutes before 4:00 p.m. so that everyone could go vote.

The foremen on each of defendant's jobs in Albuquerque had been instructed by the general superintendent for the company that all work at various job locations would be shut down shortly before 4:00 p.m. to allow employees sufficient time to vote. This information was communicated to company employees. The adjusted work schedule for election day conformed to a practice followed by a number of other construction firms in Albuquerque. Defendant paid all of its employees for a full, eight-hour day on November 6, 1984.

Despite the foreman's admonition, Lujan left the jobsite at 2:30 p.m. He returned home, cleaned up and arrived at his voting precinct at 3:15 p.m. Lujan did not return back to work until the following morning. Lujan was the only employee of defendant to leave the jobsite prior to 3:55 p.m. on election day.

When Lujan returned to work the day following the election, he was informed that he was being terminated for leaving the jobsite on election day without authorization. Defendant's normal working hours were 8:00 a.m. to 4:30 p.m.; however, on election day its work schedule was adjusted from 8:00 a.m. to 4:00 p.m. The polls on that day were open from 8:00 a.m. to 7:00 p.m.

Following Lujan's termination, charges of violating Section 1–12–42 were filed against defendant. Defendant was convicted of violating the statute and fined $50.

Thereafter, defendant appealed its conviction to the district court; after a trial de novo, he was again convicted of violation of the statute and a similar fine was assessed.

### DISCUSSION

The issue raised on appeal is whether this state's statute, Section 1–12–42, requiring employers to allow their employees to absent themselves from their place of work in order to vote, without penalty or deduction in pay, is violated if the employer adjusts its customary daily work schedule in order to come within an exception provided by the act. This is a matter of first impression in New Mexico.

Defendant contends that its adjustment of its employees' work schedule on election day constituted compliance with the exception provided in the statute mandating release of employees for voting purposes. Section 1–12–42 provides:

> A. On election day any voter may absent himself from employment in which he is engaged for two hours for the purpose of voting between the time of opening and the time of closing the polls. The voter shall not be liable to any penalty for such absence; however, the employer may specify the hours during this period in which the voter may be absent.
>
> B. The provisions of subsection A of this section do not apply to any employee whose work day begins more than two hours subsequent to the time of opening the polls, *or ends more than three hours prior to the time of closing the polls.* [Emphasis added.]

Defendant contends that its release of all employees on election day prior to 4:00 p.m., when the polls did not close until 7:00 p.m., provided defendant and its other employees three full hours to vote. The state asserts that defendant's practice of adjusting working hours on election day is not in compliance with the statute. The state further asserts that defendant was obligated to authorize its employees to absent themselves no later than 2:30 p.m. on election day in order to furnish two fully paid hours away from the work on election day.

Section 1–12–42(B) provides that any employee whose workday ends more than three hours prior to the closing of the polls need not be allowed to absent himself from employment for two hours on election day, as mandated in Section 1–12–42(A). The statute is silent as to whether an employer may readjust its prescribed working hours on election day, so as to satisfy the voting time requirement under Section 1–12–42(B). However under Section 1–12–42(A), the employer is permitted to specify the hours of employee absence for voting, but he may not penalize the employee for such absence.

A majority of states have enacted legislation commonly referred to as "pay-while-voting" statutes, designed to require employers to give their employees time for voting during regular working hours, without making a deduction from their usual salary or wages. *See* Note, *Pay While Voting*, 47 Colo.L.Rev. 135, 137 (1947). Although the language of the individual statutes varies from jurisdiction to jurisdiction, the intent of such legislation is to safeguard the right of suffrage by preventing employers from depriving workers of their opportunity to vote because of economic necessity. *Day-Brite Lighting Inc. v. Missouri*, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952). The United States Supreme Court has upheld the validity of "pay-while-voting" statutes similar to that adopted by this state as a safeguard to the right of suffrage and has analogized such legislation to a form of statutory minimum wage requirement. *Id.*

The principal objective of this state's statute is two-fold: (1) to assure adequate opportunity for employees who are in fact qualified and registered voters to vote on election day; and (2) to provide an incentive for workers to vote, without deduction of salary or penalty by the employer for exercising the right to vote. Section 1–12–42. A secondary objective of the statute is to allow the employer flexibility in arranging work hours in order to reduce the disruption caused by the absence of employees. Section 1–12–42(A).

■ In the instant case, defendant adjusted its daily work schedule in order to release its employees from work more than three hours prior to the closing of the polls. No wage deduction was effected due to the shortened workday, and each employee was paid for the normal, full eight-hour workday. No contention is asserted that defendant was precluded under any collective work agreement from adjusting the work period on election day, so long as employees were not penalized or paid less than their standard wages for a full eight-hour day. New Mexico's statute provides for an exception to the two-hour voter absence where the workday ends prior to "more than three hours prior to the time of the closing of the polls." Section 1–12–42(B). The procedure under Section 1–12–42(B) complies with the objectives of the statute by according at least a three-hour period in which employees may vote, without any diminishment of their usual eight-hour pay.

Balanced against this objective of insuring employees' right to vote is the correlative interest of an employer in structuring his workday so as to minimize any disruption. *See Nikolaus v. Pandick Press, Inc.,* 22 Misc.2d 908, 194 N.Y.S.2d 381 (1959). Adjustment of the workday period by defendant on election day to accord its employees more than three hours time within which to vote prior to the closing of the polls was not contrary to law. *See id.*

Defendant's adjustment of its workday schedule on election day does not violate Section 1–12–42. Since there is no violation of the statute, the court does not reach the issue of wrongful discharge.

■ Defendant challenges the constitutionality of Section 1–12–42, arguing that: (1) the statute is overbroad, vague and ambiguous; and (2) it is a violation of the due process and equal protection clauses of the state and federal constitution. *See also* Recent Decisions, *Constitutional Law—Pay-While-Voting Statutes,* 27 Notre Dame L.Rev. 456 (1952). A court will not decide constitutional questions unless necessary to a disposition of the case. *In re Bunnell,* 100 N.M. 242, 668 P.2d 1119 (Ct.App.1983). Because we find defendant in compliance with Section 1–12–42, we do not reach defendant's constitutional argument.

Defendant's conviction is reversed.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.